The Honorable Robbie Wills State Representative Post Office Box 306 Conway, AR 72033-0306
Dear Representative Wills:
You have requested my opinion concerning the potential applicability of the Arkansas Freedom of Information Act ("FOIA")[1] under the following two hypothetical scenarios:
 Fact pattern (a): Prior to a city council meeting in a first-class city, the city attorney sends an e-mail message to the city council members. The message provides the aldermen with general information on the process involving a referendum of a city ordinance and the process of setting the date for the referendum election. The attorney advises the aldermen that the city council has the power to set the date of the referendum election, even if the date set by the city council differs from the election date specified in the referendum petition. The message also specifically discusses the zoning impact if the referendum election successfully overturns the city council's action that was the subject of the referendum petition. The city attorney conspicuously advises the members that the message does not constitute a meeting and that the aldermen should not reply to any other members, individually or as a group. The city attorney also sends the e-mail message to members of the media.
 Fact pattern (b): Prior to a city council meeting in a first-class city, the mayor sends an e-mail message simultaneously to all city council members. Members of the media were not copied on the message. The message contains information updating the members on details of a rezoning ordinance referendum. The mayor advises the members that he wants to set an election as soon as possible and explains his reasoning. The mayor does not ask for any response from the aldermen and it is not known whether any members responded. At the subsequent city council meeting, the city council approves the mayor's request on the election timing.
Your specific questions in this regard are as follows:
 1. Does either of the e-mail communications described in Fact Pattern (a) and (b) constitute a violation of the open meetings provision (Ark. Code Ann. § 25-19-106) of the Freedom of Information Act?
 2. Under what circumstances will an e-mail communication constitute a violation of the open meetings provision of (Ark. Code Ann. § 25-19-106) of the Freedom of Information Act?
RESPONSE
A definitive answer to these questions ultimately depends upon the line between legal correspondence and illegal "meetings" in the context of electronic communications, a matter that remains uncertain under the Arkansas FOIA. As discussed below, some jurisdictions draw the line based upon the presence or absence of some exchange among the members of the governing body, concluding that the passive receipt of information does not give rise to a violation. While I believe our court might be receptive to this approach, the issue remains open. I must also note that regardless of the applicable test, it would also be necessary to consider all of the surrounding facts and circumstances in order to determine whether there was a violation in any particular instance.
I am therefore unable to conclusively respond to your questions. I can, however, discuss the general legal principles that might influence or guide our court's review of the matter. Your hypothetical scenarios also prompt me to issue a note of caution that the sender of the e-mail and the council risk being found in violation of the FOIA if there is any indication that the public was prevented from monitoring and observing the council's discussion of public business.
DISCUSSION
As an initial matter, it seems well-established that an e-mail message, like a letter, although subject to disclosure as a "public record" (see
A.C.A. § 25-19-103(5)(A) and -105), ordinarily does not evidence a "meeting." See Ark. Op. Att'y Gen. 2003-048 and Watkins and Peltz, The Arkansas Freedom of Information Act (m m Press, 4th ed., 2004) at 290. The FOIA defines "public meetings" in relevant part as "the meetings of . . . any political subdivision of the state, including municipalities. . . ." A.C.A. § 25-19-103(4) (Supp. 2003). Although this circular definition is not particularly helpful, the Arkansas Supreme Court has held that a "meeting" for purposes of the FOIA is any gathering of a governing body at which the body discusses official business on which foreseeable action might be taken. El Dorado Mayor v. El DoradoBroadcasting Co., 260 Ark. 821, 824, 544 S.W.2d 206 (1976). It seems clear under this formulation that an e-mail message sent from either the city attorney or the mayor to members of the council ordinarily would not constitute a meeting because it would not evidence a gathering.
This represents one end of the spectrum, in my view, the proposition being that the mere use of e-mail does not automatically constitute a meeting. E-mail is generally analogous instead to written correspondence. At the other end is the likelihood of a violation when decisions are made through sequential or circular communications that avoid public discussion of the matter. The court in Harris v. City ofFort Smith, No. 04-485 (Ark.Sup.Ct. Nov. 4, 2004), held that that one-on-one discussions by telephone or in person between the city administrator and board members to approve a proposed real-estate purchase violated the FOIA's open-meetings requirement, analogizing to the telephone poll at issue in Rehab Hospital Services Corp. v. Delta-HillsHealth Systems Agency Inc., 285 Ark. 397, 687 S.W.2d 840 (1985)). As with face-to-face meetings and telephone conversations, the potential for circumventing the FOIA open meeting requirement through sequential or circular series of communications also exists with e-mail. Accord Ark. Op. Att'y Gen. 1999-018.
Because our court has not had occasion to address a scenario that might fall somewhere in between these two extremes, it is difficult to fully elucidate the circumstances under which e-mail correspondence might amount to an illegal meeting. These decisions and a few others do, however, offer insight into the court's probable approach to some aspects of the question. In particular, we can glean from the above cases that our court likely ascribes to the view that contemporaneous physical presence is not necessary for a "meeting" to occur.[2] Our court has also affirmed the principle that not only are the ultimate decisions of public bodies intended to be open to the public, but also the deliberations that form the basis for those decisions. This is reflected in the following pronouncement concerning the policy statement of the FOIA:[3]
 When the General Assembly used the expression `to learn and to report fully [emphasis original] the activities of their public officials', it meant not only the action taken on particular matters, but likewise the reasons for taking that action. Actually, public knowledge of the reasons can well result in a board decision being more acceptable or palatable; to the contrary, decisions rendered in secret, the reasons not being known, can well result in perhaps unjustified criticism of a board. Is not the public entitled to know why a board adopts certain rules or regulations? The "why" is the essence of the action taken.
Arkansas Gazette Co. v. Pickens, 258 Ark. 69, 75, 522 S.W.2d 350 (1975) (emphasis added).
It is my opinion that this purpose of opening to the public all steps in the deliberative process may further inform the question whether either of your hypothetical scenarios states a FOIA violation. Specifically, I believe it would be important to know what transpired after the e-mail message was sent, and whether there is any suggestion that the public was not able to monitor and observe any deliberations.
This leads me to note an approach that has been adopted in several other jurisdictions whose statutes, like our FOIA, do not explicitly address the use of electronic or other technological means of evading open meeting requirements. The Attorney General of Delaware, drawing from a Washington Court of Appeals case, has recognized that a "meeting" can include e-mail correspondence even without an express statutory provision. See Del. Op. Att'y Gen. No. 03-IB11 (May 19, 2003). The analysis focuses on the substance of the e-mail and the presence or absence of any interaction among the governing body members. As noted inSome Assembly Required: The Application of State Open Meeting Laws toEmail Correspondence, supra at n. 2, these jurisdictions distinguish between "`informational' correspondence and correspondence designed to elicit substantive discussion. . . ." 12 Geo. Mason L. Rev. at 747. The Washington case is illustrative wherein it concludes:
 Thus, in light of the OPMA's [Open Public Meetings Act] broad definition of `meeting' and its broad purpose, and considering the mandate to liberally construe this statute in favor of coverage, we conclude that the exchange of e-mails can constitute a `meeting.' In doing so, we also recognize the need for balance between the right of the public to have its business conducted in the open and the need for members of governing bodies to obtain information and communicate in order to function effectively. [Footnote omitted.] Thus, we emphasize that the mere use or passive receipt of e-mail does not automatically constitute a `meeting.' . . . [T]he OPMA is not implicated when members receive information about upcoming issues or communicate amongst themselves about matters unrelated to the governing body's business via e-mail.
Wood v. Battleground School District, 107 Wn. App. 550, 564, 27 P.3d 1208
(2001) (emphasis added).
This approach has also been adopted by the Florida Attorney General, as reflected in an opinion addressing a question concerning "the e-mail communication of factual background information from one city council member to other council members." Fla. Op. Att'y Gen. No. 2001-20 (March 20, 2001). Apparently, the city council in question had a practice of e-mailing the city manager to request background information on agenda items prior to council meetings. All members were provided with the request and the responsive communications, copies of which were placed in a publicly accessible "reading file." The specific question was whether such an "e-mail communication of factual background information" constitutes a meeting "when it does not result in the exchange of council members' comments or responses on subjects requiring council action."Id. The answer was no, based on several previous opinions involving the use of memoranda to either recommend certain action or provide information before a public meeting. It was first observed that the Florida statute "applies to any gathering where members deal with some matter on which foreseeable action will be taken by the board[,]" and that "Florida courts have recognized that it is the entire decision-making process that is covered by the [open records act]. . . ."Id. The ensuing discussion of the memos at issue in the other opinions then provided the basis for the conclusion that the informational e-mails did not amount to a meeting. It was specifically noted regarding one of the memos that it "did not solicit responses from other board members and there was no discussion among the members concerning the memorandum prior to the . . . meeting, nor was there any exchange of correspondence among the board members concerning the memorandum." Id. It was stated regarding the other memo that its use did not violate Florida's open meeting law "so long as no interaction related to the memorandum took place . . . prior to the public meeting." Id.
The Attorney General of Arizona similarly concluded that "a one-way communication by one board member to other members . . ., with no further exchanges between members, is not a per se violation of the OML [Open Meeting Law]." Ariz. Op. Att'y Gen. No. 105-004, supra.[4]
Although our FOIA is not identical to the so-called "sunshine" laws in these states, the similarities compel me to speculate that our court might embrace the general concept that so-called "informational correspondence" (12 Geo. Mason L. Rev., supra) or the "passive receipt of e-mail" (Wood, supra) does not constitute a "meeting." Whether either of the e-mails you have described constitutes a violation is a question that would likely require evaluation of additional facts. I believe it would be particularly relevant to establish whether there were any responses and, with respect to the second scenario, whether any discussion took place at the meeting where the council approved the mayor's request. If there was little or no discussion, this might suggest that some part of the deliberation on the matter was secret, contrary to the principle espoused in Pickens, supra.
In conclusion, therefore, it is my opinion that a violation of the FOIA's open meeting requirement could occur under circumstances involving e-mail communications, but only a finder of fact presented with all the underlying circumstances will be situated to decide the matter. I must also issue a note of caution that there will likely be risks whenever e-mail is used to disseminate information to the members of a governing concerning the body's official business. Accordingly, I must reiterate my immediate predecessor's caution against any discussion of pending public business outside a public meeting context. See Ark. Op. Att'y Gen.2001-166.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] A.C.A. §§ 25-19-101 through -109 (Repl. 2002, Supp. 2003, 
Acts 259, 1994, and 2003 of 2005).
[2] This distinguishes Arkansas from those states with open meeting laws that appear to reflect a concern with the presence or absence of a simultaneous discussion of some kind. For a discussion of this so-called "simultaneity" requirement, see J. Connor and J. Baratz, Some AssemblyRequired: The Application of State Open Meeting Laws to EmailCorrespondence, 12 Geo. Mason L. Rev. 719 (Spring, 2004). In this regard, I note that the referenced article appears to mischaracterize one of my predecessor's opinions, Ark. Att'y Gen. Op. 1999-018, supra, by citing it together with several other attorneys general opinions that have made comparatively unqualified statements regarding the inapplicability of their open meeting statutes to e-mail communications.See 12 Geo. Mason L. Rev. at 746. This fails to recognize my predecessor's admonition regarding the potential evasion of the Arkansas FOIA "through sequential or circular series of meetings. . . ." Op. 1999-018 at n. 3. This admonition was borne out by the Arkansas Supreme Court's decision in Harris, supra.
[3] The policy statement, contained in A.C.A. § 25-19-102 (Repl. 2002), states in full:
 It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.
[4] I note, however, that under Arizona law, "[a]n exchange of facts, as well as opinion, may constitute deliberations under the [Arizona Open Meeting Law." Ariz. Op. Att'y Gen. No. 105-004. According to the Arizona Attorney General, this distinguishes Arizona from states, like Florida, that "permit exchanges of information among a quorum of a public body outside of public meetings." Id. at n. 6.